UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JASNA OSTOJICH and JOHN OSTOJICH,<br>     Plaintiffs<br><br>     v.<br><br>SPECIALIZED LOAN SERVICING, LLC,<br>     Defendant | No. 21 CV 4852<br><br>Judge Jeremy C. Daniel |

**MEMORANDUM OPINION AND ORDER**

The plaintiffs are homeowners who allege that Defendant Specialized Loan Servicing, LLC ("SLS") submitted false information about their home mortgage loan to credit reporting agencies in violation of § 1692e(8) of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*. The parties now cross move for summary judgment. (R. 66; R. 83.) The Court finds that the plaintiffs have Article III standing to pursue their FDCPA claim, and that the initiation of this lawsuit triggered SLS's obligation to report the debt as disputed under § 1692e(8). There is, however, an issue of material fact as to whether Plaintiff Jasna Ostojich's oral statements to SLS were sufficient to dispute the debt at an earlier time. Accordingly, the defendant's motion for summary judgment is denied, and the plaintiffs' motion for summary judgment is granted in part and denied in part. The case shall be set for trial on the remaining issues of liability and statutory damages.

## BACKGROUND[1]

In June 2006, Plaintiffs Jasna and John Ostojich obtained a loan from Bank of America secured by a mortgage on their home in Park Ridge, Illinois. (Def.'s Resp. to Pl.'s SOF ¶¶ 6, 7.) The plaintiffs defaulted on the loan, and the debt was transferred to Defendant SLS for servicing. (*Id.* ¶¶ 8, 9.) On July 31, 2020, the parties executed a modification agreement with an effective date of June 6, 2020. (*Id.* ¶ 10.) The agreement requires the plaintiffs to make adjusted principal and interest payments on the first day of each month, beginning on August 1, 2020. (*Id.*; R 33-5 § 3.) Payments not made on the first of each month are subject to a ten-day grace period. (Def.'s Resp. to Pl.'s SOF ¶ 21.)

Between September 2020 and November 2022, SLS furnished credit information about the loan to three third-party reporting agencies: Experian, Equifax, and Trans Union (together, the "CRAs"). (*Id.* ¶¶ 13, 14.) The reports, which were filed on a monthly basis, showed the balance of the loan as well as the plaintiffs' payment history. (R. 68-1 at 46–48 ¶¶ 7–10.) The reports showed that the plaintiffs had made each payment on time and were current on the loan. (*Id.* ¶ 9.) SLS did not

---

[1] The Court takes relevant facts from the parties' Rule 56.1 statements, (*see* Defendant's Local Rule 56.1 Statement of Material Facts (R. 68) ("Def.'s SOF"); Plaintiffs' Response to Defendant's Statement of Material Facts (R. 83-2) ("Pl.'s Resp. to Def.'s SOF"); Plaintiffs' Local Rule 56.1 Statement of Material Facts (R. 83-3) ("Pl.'s SOF"); Defendant's Response to Plaintiffs' Local Rule 56.1 Statement of Material Facts (R. 87) ("Def.'s Resp. to Pl.'s SOF")), the materials cited therein, and all other aspects of the record in this case. All facts are genuinely undisputed unless otherwise noted. For CM/ECF filings, the Court cites to the page number(s) set forth in the document's CM/ECF header unless citing to a particular paragraph or other page designation is more appropriate.

report the loan as disputed to the CRAs until February 2022 when the plaintiffs filed their first amended complaint. (*Id.* ¶ 30.)

Between July 2020 and March 2021, Jasna Ostojich and representatives of SLS contacted each other at least ten times via telephone. (*See* R. 69 at 8–10; R. 42; R. 73.) Only three of these calls are at issue for the purposes of the present motions.[2]

First, on October 5, 2020, Ostojich called SLS regarding her monthly payment. (R. 43 ("October 5, 2020, Call").) Ostojich informed a collection agent that payments she had made for August and September 2020 were showing as unpaid on her online account statement. (*Id.* at 1:45–2:45.) SLS confirmed that the August and September payments had been received and applied, and that only the amount due on October 1, 2020, remained. (*Id.*) Ostojich stated that she would like to see the balance as paid, and that she was worried that the information displayed on the portal could negatively impact her credit score. (*Id.* at 3:30–3:15.) She also indicated that she had been having issues with the account for "the last twelve months." (*Id.* at 4:00–4:30.) The collection agent responded that she would have to make a request to modify her online statement in writing. (*Id.* at 4:30–6:30.) Ostojich proceeded to pay the outstanding balance over the phone. (*Id.*)

---

[2] FDCPA claims are subject to a one-year statute of limitations. 15 U.S.C. § 1692k(d). In prior filings, the plaintiff represented that "only those communications made within the last year prior to the [filing of the] complaint" *i.e.*, on or after September 13, 2020, "would be actionable." (R. 39 at 7.) In their summary judgment briefing the plaintiffs do not contend they disputed the debt on any date prior to October 5, 2020. (*See* R. 83-1). They have therefore waived theories based on pre-October 5, 2020, telephone conversations. *See Ross v. Fin. Asset Mgmt. Sys., Inc.*, 74 F.4th 429, 434 (7th Cir. 2023) ("When a party fails to develop an argument in the district court, the argument is waived. . . . .").

Five months later, on March 5, 2021, an SLS collection agent called Ostojich to inquire about a payment due on March 1, 2021. (*Id.* ("First March 5, 2021, Call").) Mrs. Ostojich did not challenge the amount owed for that month, which she paid in full on the call. (*Id.*) However, she told the SLS agent that she disagreed with her characterization of the payment as "delinquent." (*Id.* at 2:26–3:07, 5:16–6:02.) Ostojich stated that she believed the payment was not delinquent because the ten-day grace period had not yet expired. (*Id.* at 6:10–7:30.) She further indicated that she believed the agent's characterization of the payment was a "pressure tactic" and that she planned to get her lawyer involved. (*Id.* at 6:10–7:30.) After Ostojich indicated that she would contact legal counsel, the collection agent stated, "I'm not going to argue with you ma'am, you can speak to your lawyer" and hung up. (*Id.* at 7:30–7:45.)

Later that day, Ostojich called SLS to request assistance logging into her online account. (*See id.* ("Second March 5, 2021, Call").) She related her version of the previous call to the SLS agent and, again, complained about the previous agent's use of the word "delinquent." (*Id.* at 8:35–9:00.) The SLS representative confirmed the payment due date, the 10-day grace period, and receipt of the plaintiffs' payment for March 2021. (*Id.* at 9:00–9:45.)

The plaintiffs filed an initial complaint on September 13, 2021, alleging that SLS engaged in unlawful debt collection practices in violation of the FDCPA. (R. 1.) They served a copy of the complaint on SLS on October 18, 2021. (R. 5.) Although the first complaint did not assert a violation of § 1692e(8), it alleged that SLS had

4

"misrepresent[ed] the amount of the alleged debt," "sought to collect money not allowed by law or by any contract creating the alleged debt," and "misrepresented the legal status of the alleged debt." (*Id.* ¶¶ 30, 31). In a joint status report filed on December 3, 2021, the plaintiffs represented that SLS was "seeking amounts from Plaintiffs that were not owed" and was pursuing "an inflated claim." (R. 14.)

On February 1, 2022, the plaintiffs filed a second amended complaint, adding allegations that SLS's failure to report the debt as disputed to the CRAs violated § 1692e(8). (R. 23.) The Court dismissed the plaintiffs' other FDCPA claims. (R. 47.) Both parties now seek summary judgment on the § 1692e(8) claim, contending that there is no genuine dispute of fact as to whether the plaintiffs disputed the debt. (R. 66; R. 83.) SLS also contends that the plaintiffs lack Article III standing. (R. 67 at 12–13.)

## LEGAL STANDARD

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp v. Catrett*, 477 U.S. 317, 322 (1986). A genuine issue of material fact requires more than the mere existence of "some alleged factual dispute between the parties." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Rather, a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017) (quoting *id.* at 248). In making this determination, the Court views the facts in the light most favorable to the nonmoving party and draws all reasonable inferences in their favor.

5

*Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted).

## ANALYSIS

### I. ARTICLE III STANDING

The Court begins with SLS's argument that the plaintiffs lack Article III standing to assert their FDCPA claim. (R. 67 at 12–13; R. 86 at 3–8.) Federal courts have jurisdiction over "Cases" and "Controversies" described in Article III, Section 2 of the Constitution. *Diedrich v. Ocwen Loan Servicing, LLC*, 839 F.3d 583, 587 (7th Cir. 2016). A case or controversy does not exist if a plaintiff lacks standing to challenge alleged misconduct. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

To demonstrate standing, the plaintiffs need only show "a colorable claim" to relief—they need not "definitively establish that a right of [theirs] has been infringed." *Bond v. Utreras*, 585 F.3d 1061, 1073 (7th Cir. 2009) (internal quotation omitted). Specifically, a plaintiff must demonstrate "(1) a concrete and particularized injury in fact (2) that is traceable to the defendant's conduct and (3) that can be redressed by judicial relief." *Pucillo v. Nat'l Credit Sys., Inc.*, 66 F.4th 634, 637 (7th Cir. 2023) (citation omitted). To qualify as concrete, an injury must be real and not abstract. *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204 (2021). In cases like this one, where the harm alleged is intangible, the alleged injury must bear a "close relationship" to the sort of harms traditionally recognized by American courts. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016); *Pucillo*, 66 F.4th at 638. This means

6

the Court must identify "a close historical or common-law analogue" to the statutory injury. *TransUnion*, 141 S. Ct. at 2204.

In *Ewing v. MED-1 Solutions, LLC*, the Seventh Circuit considered whether a plaintiff had standing to assert an FDCPA claim under § 1692e(8) based on evidence that a debt collector failed to notate a debt as "disputed" on a credit report. 24 F.4th 1146 (7th Cir. 2022). The Seventh Circuit found that the common law tort of defamation provided a historical analog to the harm recognized by the statute, and that when a debt collector provides false credit information about a consumer to a credit reporting agency, the consumer suffers "an intangible, reputational injury that is sufficiently concrete for purposes of Article III standing." *Id.* at 1154.

Under *Ewing*, evidence that SLS disseminated false information on credit reports submitted to CRAs is sufficient to establish standing under Article III. *Thomas v. LVNV Funding, LLC*, 642 F. Supp. 3d 728, 732 (N.D. Ill. 2022). This is so even if the plaintiffs cannot show any negative impact on their credit score because of the dissemination. *See id.*; *Wood v. Sec. Credit Servs., LLC*, No. 20 C 2369, 2023 WL 3614919, at *3 (N.D. Ill. May 23, 2023) (holding that *Ewing* does not "require[e] damage to [a plaintiff's] credit score" to establish Article III standing, rather "communicating the inaccurate information alone" creates a sufficiently concrete injury for standing purposes).

SLS points out that the plaintiff in *Ewing* supplied evidence that her credit score was harmed by the false disclosures. (R. 86 at 4, 6 n.1 (citing 24 F.4th at 1153).) By contrast, SLS contends that the reporting submitted to the CRAs was uniformly

7

positive, as it showed that the plaintiffs had timely made all of their payments. (*See id.*) Even accepting SLS's characterization of the credit reports, its argument conflates Article III's injury in fact requirement with the plaintiffs' entitlement to relief on the merits of their claim. "Alleging injury for purposes of standing is not the same as submitting adequate evidence of injury under the statute to survive a motion for summary judgment." *Diedrich v. Ocwen Loan Servicing, LLC*, 839 F.3d 583, 591 (7th Cir. 2016). "Standing is a prerequisite to filing suit, while the underlying merits of a claim (and the laws governing its resolution) determine whether the plaintiff is entitled to relief." *Arreola v. Godinez*, 546 F.3d 788, 795 (7th Cir. 2008).

The defendants cite *Stagger v. Experian Information Solutions, Inc.*, a case in which a district court dismissed claims under the Fair Credit Reporting Act at summary judgment due to the plaintiff's failure to establish standing under *Ewing*. No. 21 C 2001, 2022 WL 632838, at *2 (N.D. Ill. Feb. 9, 2022). *Stagger* arose under a different statutory scheme, however, and involved evidence that a credit provider had inaccurately stated that a debt was "Open/Never Late"—statements that the district court held were "nothing like reporting an unpaid debt without including that the debt is disputed." *Id.* To the extent that the district court in *Stagger* concluded that the plaintiff lacked standing because the statement in question was not defamatory, the Court declines to follow a similar path, lest it "become[] too enmeshed in the plaintiff[s'] entitlement to relief" and "stray beyond the standing inquiry into the merits." *Arreola*, 546 F.3d at 795.

8

Finally, SLS suggests that the plaintiffs lack standing because they have conceded that they cannot prove actual damages. (*See* R. 86 at 2 (citing R. 74).) But "[t]he FDCPA does not require proof of actual damages as a precursor to the recovery of statutory damages." *Keele v. Wexler*, 149 F.3d 589, 593 (7th Cir. 1998); *accord Valenta v. Midland Funding, LLC*, No. 17 C 6609, 2019 WL 1429656, at *6 (N.D. Ill. Mar. 29, 2019). Accordingly, the Court denies SLS's motion to dismiss the complaint for lack of subject matter jurisdiction and proceeds to ruling on the parties' motions for summary judgment.

## II. MERITS

The FDCPA provides that a "debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. A debt collector violates the FDCPA by communicating "credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed." 15 U.S.C. § 1692e(8). There is no question that the mortgage loan is a "debt" under the FDCPA, since the plaintiffs incurred the obligation primarily for "personal, family or household purposes." 15 U.S.C. § 1692a(5); (Def.'s Resp. to Pl.'s SOF ¶¶ 10–12.) Nor is there any dispute that SLS is a "debt collector" under the statute. 15 U.S.C. § 1692a(6); (Def.'s Resp. to Pl.'s SOF ¶¶ 4, 13.) The sole disagreement is whether the parties' communications provided a sufficient basis for SLS to determine that the debt was disputed. (*See id.* ¶¶ 20–30.)

The FDCPA "does not define 'dispute' or provide a procedure for consumers to follow to dispute their debt." *Evans v. Portfolio Recovery Assoc., LLC*, 889 F.3d 337,

9

346 (7th Cir. 2018). The Seventh Circuit has held that the ordinary meaning of "dispute" in the context of § 1692e(8) means "to call into question or cast doubt upon." *Id.* (quoting *Dispute*, MERRIAM-WEBSTER DICTIONARY). This definition encompasses a variety of language and does not require a consumer to invoke a particular formula to dispute a debt. *Id.* at 347; *see also Eul v. Transworld Sys.*, No. 15 C 7755, 2017 WL 1178537, at *23 (N.D. Ill. Mar. 30, 2017) (collecting cases). Moreover, the legitimacy of the dispute does not matter for the purposes of § 1692e(8)'s reporting obligation. *Evans*, 889 F.3d at 347 ("Section 1692e(8) does not require an individual's dispute be valid or even reasonable"). "Instead, the plaintiff must simply make clear that he or she disputes the debt." *Id.*

The parties disagree as to whether oral representations made by Ostojich during the October 5, 2020, and March 5, 2021, telephone conversations were sufficient to dispute the debt and trigger SLS's reporting obligation. The Court concludes that there is a question of material fact as to whether Ostojich's statements were sufficient to dispute the debt. Given the sheer breadth of the definition of "dispute," a reasonable jury could conclude that Ostojich's statements contesting how the debt was displayed as "paid" on her online portal and whether the March 5 payment was "delinquent" "called into question" or "cast doubt upon" the debt. *Evans*, 889 F.3d at 346.

At the same time, contrary to the plaintiffs' argument, Ostojich's statements are distinguishable from *Evans*, where the plaintiff indicated via letter that "the amount reported is not accurate." 889 F.3d at 346. This same formulation appeared

10

in each of the district court cases that *Evans* approved of or affirmed. *See Baranowski v. Portfolio Recovery Assocs., LLC*, No. 15 C 2939, 2018 WL 1534967, at *1 (N.D. Ill. Mar. 29, 2018) (plaintiff sent debt collector letter stating "the amount reported is not accurate"); *Flores v. Portfolio Recovery Assocs., LLC*, No. 15 C 2443, 2017 WL 5891032, at *1 (N.D. Ill. Nov. 29, 2017) (same); *Paz v. Portfolio Recovery Assocs., LLC*, No. 15 C 5073, 2016 WL 6833932, at *1 (N.D. Ill. Nov. 21, 2016) (same); *Bowse v. Portfolio Recovery Assocs., LLC*, 218 F. Supp. 3d 745, 751 (N.D. Ill. 2016) (same); *Gomez v. Portfolio Recovery Assocs., LLC*, No. 15 C 4499, 2016 WL 3387158, at *2 (N.D. Ill. June 20, 2016) (same). Because Ostojich never objected to the amount owing or the fact that she owed the debt, her statements fall short of what any court in this District has held as sufficient to establish § 1692e(8) liability.

While "the FDCPA does not require the use of particular words to dispute a debt," *Bowse*, 218 F. Supp. 3d at 751, neither of the parties have identified any FDCPA cases that were decided on an analogous set of facts. Although *Evans* and the district court cases cited above shed some light on the issue by "helpfully illustrat[ing] what is *sufficient* to dispute a debt," "they do not clarify what is *necessary* to do so because none of them found a purported 'dispute' insufficient." *Eul*, 2017 WL 1178537, at *23 (emphasis added). Because reasonable minds could disagree as to whether Ostojich "called into question" or "cast doubt upon" the debt, the Court finds that the issue is better determined by a jury. Accordingly, the Court denies both parties' motions for summary judgment.

Things are clearer with respect to the plaintiffs' filings in this lawsuit, however. It is undisputed that the plaintiffs served a copy of their initial complaint on SLS on October 18, 2021. (R. 5.) This complaint alleged, among other things, that SLS "misrepresent[ed] the amount of the alleged debt," "sought to collect money not allowed by law or by any contract creating the alleged debt," and "misrepresented the legal status of the alleged debt." (R. 1 ¶¶ 30, 31). The provisions of §1692e apply to statements made in court filings. *Marquez v. Weinstein, Pinson & Riley, P.S.*, 836 F.3d 808, 810 (7th Cir. 2016). Thus, in no uncertain terms, the plaintiffs disputed the debt no later than October 18, 2021, triggering SLS's obligation to report the debt as disputed in monthly reports to CRAs. And the evidence indicates that, notwithstanding the allegations in the complaint, SLS failed to report the debt as disputed until February 2022.

SLS attempts to contextualize the statements in the complaint as related to "historical events" that had already been resolved by the modification agreement and subsequent payments. (R. 67 at 11–12.) But SLS's belief that a dispute had been resolved does not excuse its obligation to report it, since a dispute need not be valid or reasonable to trigger a debt collector's reporting obligation. *Evans*, 889 F.3d at 347. Nor is SLS's suggestion that the allegations in the complaint violated Rule 11 of the Federal Rules of Civil Procedure (*see* R. 86 at 13 n.6) helpful in this context. Although a plaintiff must have a good faith basis for filing a lawsuit in federal court, "a consumer can dispute a debt for no reason at all." *DeKoven v. Plaza Assocs.*, 599 F.3d 578, 582 (7th Cir. 2010) (quotation omitted).

SLS also points to the previous District Judge's statement in an order denying its motion for sanctions that the record was "too hazy" to decide whether sanctions were warranted. (R. 48.) SLS overreads the Court's order by suggesting that its reluctance to rule on a sanctions motion somehow forecasted a ruling on the merits of the plaintiffs' FDCPA claim. Even assuming that the order is relevant to the present motions, it is not binding. Rule 54(b) of the Federal Rule of Civil Procedure allows the Court to reconsider and revise prior rulings at any time before the entry of judgment.

Finally, SLS points out that, on October 28, 2022, Plaintiffs filed a statement at the Court's direction confirming that they "did not dispute the 'existence of the debt." (R. 51) Even if this statement reflects an admission that the plaintiffs never intended to dispute any aspect of the debt, "the 'knows or should know' standard of § 1692e(8) . . . depends solely on the debt collector's knowledge that a debt is disputed.'" *Evans*, 889 F.3d at 347 (quoting *Brady v. Credit Recovery Co., Inc.*, 160 F.3d 64, 67 (1st Cir. 1998)). The plaintiffs' retroactive assessment of the dispute is therefore irrelevant. *See Goss v. Receivables Performance Mgmt., LLC*, No. 19 C 642, 2020 WL 2219048, at *4 (N.D. Ill. May 7, 2020) (noting the absence of authority for "the proposition that the Court should consider plaintiff's after-the-fact subjective assessment of whether she sufficiently disputed her debt").

Because allegations in the initial complaint unambiguously indicate that the plaintiffs "called into question" the legitimacy of their debt when they filed the initial complaint, *Evans*, 889 F.3d at 346, the Court grants the plaintiffs' motion as to

reports sent to CRAs between October 18, 2021, when the complaint was served on SLS, and February 2022, when SLS began reporting the debt as disputed to CRAs, and denies SLS's motion. The remainder of SLS's motion is denied. Since "the FDCPA provides for trial by jury in determining statutory . . . damages," *McMahon v. LVNV Funding, LLC*, 301 F. Supp. 3d 866, 880 (N.D. Ill. 2018) (quoting *Kobs v. Arrow Serv. Bureau, Inc.*, 134 F.3d 893, 896–99 (7th Cir. 1998)), the amount of statutory damages to which the plaintiffs are entitled must be decided by a jury.

## CONCLUSION

For the reasons stated in this Memorandum Opinion and Order, the Court denies the defendant's motion for summary judgment [66], grants the plaintiffs' motion for summary judgment [83] in part, and denies it in part. The parties shall submit a joint status report with proposed trial dates no later than May 31, 2024. The parties should discuss whether a joint trial on the issues of liability and damages is appropriate, as well as the anticipated length of trial.

Date: May 17, 2024

JEREMY C. DANIEL
United States District Judge